UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA DUARTE, ) | |
| ) | |
| Plaintiff, ) | No. 17 C 06051 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| CONVERGENT OUTSOURCING, INC., ) | |
| and COMCAST CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

In March 2017, Brenda Duarte filed a lawsuit against a debt collector, hired by Defendant Comcast, for its allegedly unlawful collection practices. R. 1, Compl. ¶¶ 13, 15, 18.[1] Once that suit began, Comcast initially halted its collection efforts, including through hired debt collectors. *Id.* ¶ 22. But as the months went by, while the first case was still pending, Comcast allegedly hired another collection agency, Defendant Convergent Outsourcing. *Id.* ¶ 24. In July 2017, Convergent sent a collection letter to Duarte—even though she was represented by an attorney in the first case. *Id.* ¶¶ 24-25. This second suit followed: Duarte sued Convergent and Comcast for violations of the Fair Debt Collection Practices Act (FDCPA) and the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), respectively.

---

[1]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

*Id.* ¶¶ 46, 48.[2] Now, Comcast moves to dismiss the ICFA count for failing to state an adequate claim. R. 22, Def. Mot. to Dismiss at 1-2; Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, the motion is denied.

## I. Background

For the purposes of this motion, the Court accepts as true the allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Before the events leading up to this suit, Brenda Duarte accumulated around $270 in charges for Comcast services in her home. Compl. ¶ 11. When she could not afford to pay her bill, Comcast hired a series of debt collectors to try to settle Duarte's account. *Id.* ¶ 13. The first collector used aggressive tactics and allegedly threatened Duarte with the addition of interest and fees to the balance. *Id.* ¶ 15. While the first company pursued Duarte, Comcast hired a second collection agency (Diversified Consultants), which began its own attempts to collect the overdue bill. *Id.* ¶ 16.

When the second agency began reporting the delinquent account to the national credit bureaus, Duarte sought the help of the Community Legal Group. Compl. ¶¶ 17-18. Once she retained her attorneys, Duarte filed a lawsuit against the first debt collector, alleging violations of the FDCPA.[3] *Id.* ¶ 18. The first collector was served in March 2017, and Duarte alleges that the debt collector notified Comcast of the lawsuit, because the suit was related to its account. *Id.* ¶¶ 20-21. After Duarte

---

[2]This Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). The Court has supplemental jurisdiction over the related state law claim under 28 U.S.C. § 1367.
[3]That case is captioned *Brenda Duarte v. Financial Business Customer Solutions, Inc.*, No. 17 C 01753 (N.D. Ill. 2017).

filed the first suit, Comcast also allegedly retracted the collection account from both of the collectors that it had hired. *Id.* ¶ 22.

While Duarte's first lawsuit was pending, Comcast hired a third collection agency, which is where Convergent Outsourcing enters the picture. Compl. ¶ 24. Convergent began efforts to collect the same debt—the nearly $270 Comcast bill—from Duarte. *See id.* ¶¶ 24-25. In July 2017, Convergent sent her a collection letter for that account. *Id.* ¶¶ 25-27; *id.* Exh. G. But Duarte was already represented by an attorney, the one who represented her in the still-pending first lawsuit. *See id.* ¶ 24. Duarte alleges that this direct communication about the debt while she was represented by an attorney violates the FDCPA. *Id.* ¶ 31. When she received the letter, Duarte suffered feelings of nervousness and hopelessness, because she felt that Convergent and Comcast would never stop hounding her, even after she got legal help. *Id.* ¶ 32. She also felt annoyed, aggravated, and suffered emotional distress. *Id.* ¶ 33.

As for Comcast specifically, Duarte alleges that Comcast purposefully hires multiple debt collection agencies as a business strategy. Compl. ¶ 34. That way, when a consumer asserts her rights as to one, Comcast can switch to another, forcing the consumer into a perpetual cycle of harassment. *Id.* ¶ 34-35. The various collectors also allow Comcast to circumvent a consumer's attorney representation. *Id.* ¶ 34. So when Comcast hired its third debt collector for Duarte's debt—when she had already retained an attorney for that debt in the first lawsuit—Duarte was harmed by Comcast's renewed attempts to collect the debt. *Id.* ¶ 37. Duarte alleges that

3

Comcast's practice of switching collectors is an unfair method of competition, in violation of ICFA. *Id.* ¶ 43.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

But fraud allegations also must satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). So Rule 9(b)'s heightened pleading standard applies to ICFA claims alleging *deceptive* business practices. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (citation omitted). Those claims alleging only *unfairness*, however, do not need to meet the heightened pleading standard reserved for fraud

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

claims. *Id.* at 446. Because Duarte specifically alleges Comcast employed "unfair methods of competition," her Complaint need only meet the relaxed pleading standards of Rule 8(a)(2). *See* Compl. ¶¶ 43, 48.

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

Comcast moves to dismiss Duarte's consumer fraud claim. R. 23, Def. Br. To state a claim under ICFA for an unfair practice, Duarte must sufficiently allege (1) an unfair act or practice committed by Comcast; (2) Comcast's intent that she rely on the unfair practice; and (3) that the unfair practice happened during a course of conduct involving trade or commerce. *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 574 (7th Cir. 2012). Duarte also must allege that the unfair practice proximately caused injury to her. *Id.* The Act should be "liberally construed to effectuate its purpose." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002).

5

## A. Unfair Practice

To determine whether a practice is "unfair" under ICFA, the statute directs courts to give consideration "to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2. Relying on United States Supreme Court precedent, the Illinois Supreme Court instructs courts to consider three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to customers." *Robinson*, 775 N.E.2d at 961 (quoting *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)). But the factors are not a conjunctive listing of criteria: there is no requirement that a practice must satisfy all three factors in order to be deemed "unfair." *Robinson*, 775 N.E.2d at 961.

Here, Duarte premises her ICFA claim on Comcast's practice of switching debt collectors to undermine a consumer's right to force collectors to communicate solely with her attorney. 15 U.S.C. § 1692c(a)(2); Compl. ¶¶ 30, 43, 48. Taken as true for the purposes of a dismissal motion, Comcast's serial hiring of collection agencies after a consumer has hired an attorney could qualify as an unfair practice under ICFA. Factor one under *Robinson* is public policy: bypassing the consumer's attorney generally undermines ICFA, which is a "regulatory and remedial statute intended to protect consumers," *Robinson*, 775 N.E.2d at 960, and specifically is an end-run around the FDCPA's dictate that debt collectors communicate with the attorney after being retained by the consumer, 15 U.S.C. § 1692c(a)(2). The second factor is also

6

satisfied: giving Duarte the benefit of reasonable inferences, it is unethical and oppressive for Comcast to intentionally work around the protections that attorney representation affords a consumer (if that is indeed what Comcast is doing). Indeed, by definition, Comcast is siccing yet another collection agency on a consumer for the *same* debt. Relatedly, and relevant to the third factor, it is reasonable to infer that a consumer in Duarte's shoes would feel distress at receiving yet another debt collection communication from yet another debt collector after hiring an attorney (and, in this case, after filing a federal lawsuit). So, at this stage of the litigation, the complaint adequately alleges an "unfair" practice under ICFA.

### B. Comcast's Intent

There is no dispute that Comcast's practice occurred in trade or commerce (usually labelled the third element of an ICFA claim), so the only remaining disputes are whether the complaint adequately alleges that Comcast intended that Duarte rely on the alleged practice and whether Duarte suffered the type of injury that is covered by ICFA.

On intent, the pertinent intent is not whether Comcast intended to *deceive* Duarte, because she is proceeding on a viable claim that Comcast engaged in an *unfair* practice. Instead, in this case ICFA only requires that Comcast engaged in an unfair act that it intended a consumer *rely* on. *Wigod,* 673 F.3d at 575. So the necessary intent is much simpler than what is needed in a deception case. The allegations readily satisfy what is needed, because the reasonable inferences, *Roberts v. City of Chi.,* 817 F.3d 561, 564 (7th Cir. 2016), in Duarte's favor are obvious:

7

Comcast hired a debt collection agency to collect the debt and of course Comcast intended Duarte to rely on the letters sent by the collector—after all, that's why Comcast hired the collector. *See Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 826 (N.D. Ill. 2013). Comcast tries to hold Duarte to the more difficult intent requirement. Def. Br. at 3. But Duarte's unfair-practice claim is not subject to Rule 9(b)'s heightened pleading standard, because a practice can be unfair without being deceptive (like this one), *People ex rel. Hartigan v. Knecht Services, Inc.*, 575 N.E.2d 1378, 1385 (Ill. App. Ct. 1991). Intent is adequately alleged.

## C. Actual Damages

Comcast's final argument is that the ICFA claim must fail because Duarte does not allege that she "sustained actual *pecuniary* harm." Def. Br. at 3 (emphasis added). In emphasizing the absence of "pecuniary" harm, Comcast contends that ICFA does not provide a cause of action for consumers who do not suffer some sort of *financial* harm—it is not enough, in Comcast's view, that Duarte alleges that she only suffered emotional distress, Compl. ¶ 33, from the receipt of yet another debt collection letter from yet another debt collector after hiring an attorney. Comcast cites a Seventh Circuit case, *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (cited by Def. Br. at 3), for the proposition that ICFA requires financial harm in order to state a valid claim. Indeed, although not cited by Comcast, there are Illinois state court opinions that generally say that financial harm is required. *E.g.*, *Morris v. Harvey Cycle and*

*Camper, Inc.,* 911 N.E.2d 1049, 1053 (Ill. App. Ct. 2009).[5] But the Illinois Supreme Court has not yet fully addressed the issue.

Before delving into those cases and their holdings, it is useful to set out the starting point for any statutory analysis: the statute's text. In the pertinent provision of ICFA, Section 10a creates a private right of action for violations of the Act that result in "actual damages":

> Any person who suffers *actual damages* as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award *actual economic damages* or any other relief which the court deems proper …

815 ILCS 505/10a(a) (emphases added). The first sentence authorizes the private right of action and the second sentence describes the relief that a court may award. The private right of action created by ICFA does require that the victim suffer "actual damages." But that term—"actual damages"—is not on its face limited to *financial* or pecuniary harm. Indeed, it is the relief-describing second sentence that uses a term that is limited to financial harm—"actual *economic* damages"—whereas the first sentence does not. So the private right of action created by the first sentence of Section 10a(a) does not seem to require financial harm as an element of an ICFA claim.

---

[5]Some federal district court decisions have adopted the pecuniary-loss requirement. *See, e.g.*, *Carrol v. S.C. Johnsons & Son, Inc.,* 2018 WL 1695421, at *6 (N.D. Ill. Mar. 29, 2018) (The actual damage element of an ICFA claim requires that the plaintiff suffer "actual pecuniary loss." (citation omitted)); *Liston v. King.com, Ltd.,* 254 F. Supp. 3d 989, 1005 (N.D. Ill. 2017) ("The actual damage component requires that a private party plaintiff allege an 'actual pecuniary loss.'" (citation omitted)); *Lowry v. Wells Fargo Bank, N.A.,* 2016 WL 4593815, at *6 (N.D. Ill. Sept. 2, 2016) ("The actual damage element of a private ICFA action requires that the plaintiff suffer 'actual pecuniary loss.'" (citation omitted)).

Case: 1:17-cv-06051 Document #: 53 Filed: 07/16/18 Page 10 of 18 PageID #:277

It is true, however, that some opinions, when reciting the elements of an ICFA claim, characterize the requisite damage as financial harm. But that is the danger of reading a listing of elements as addressing all types of ICFA claims when the actual *holding* of the case does not deal with a case like Duarte's. For example, the one and only case that Comcast cites for the financial-harm element is *Kim v. Carter's Inc.,* 598 F.3d 362, 365 (7th Cir. 2010). In *Kim*, consumers alleged that a children's clothing maker, Carter's, advertised discounts on clothes as some percentage off of "suggested" retail prices. *Id.* at 363. The consumers asserted that, in reality, the suggested prices were actually much higher than Carter's regular prices, so it looked like the discounts represented a great deal when in fact the savings were a sham. *Id.* The consumers brought an ICFA claim against Carter's.

In assessing the viability of the claim, the Seventh Circuit first noted that this type of false comparison between an actual and fictitious "suggested retail price" did qualify as an "unfair or deceptive" under ICFA. 598 F.3d at 365. But the problem with the claim was that there was no pecuniary harm, because the consumers did not allege that the clothes were not worth what they had paid for them. *Id.* at 365-66. The "plaintiffs in this case got the benefit of their bargain and suffered no actual pecuniary harm." *Id.* at 366. No actual damages, so no ICFA claim. *Id.*

But *Kim* involved a very different type of ICFA claim than the one that Duarte is pursuing. In *Kim*, the consumers asserted that they were *deceived* by the purported discount, and the deception led them to buy the clothes. 598 F.3d at 366. So naturally the Seventh Circuit evaluated whether, despite the deception, the consumers received

10

the benefit of the bargain (they did). But in a case challenging an *unfair* practice in which there is no bargain to assess, it makes little sense to ask whether the consumer got the benefit of the non-existent bargain. And Comcast does not argue that the only valid ICFA claims are ones that involve a fully executed sales transaction.[6]

In light of the contrast between the type of claim asserted in *Kim* versus the type of claim advanced by Duarte, it is worth asking what authority *Kim* relied on for the proposition that an ICFA plaintiff suffer "actual pecuniary loss." 598 F.3d at 365. The answer is that the one case cited for that proposition is an Illinois Appellate Court decision, *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. App. Ct. 2008). But *Mulligan* too was a comparative-price deception case involving a seller that listed fictitious "retail values" next to the sales price. 888 N.E.2d at 1195-96. The Illinois Appellate Court "examin[ed] the bargain" that the consumer made in the case, and held that the consumer did not suffer "actual pecuniary loss" because no evidence showed that "the value of what she received was less than the value of what she was promised." *Id.* at 1197.

So *Mulligan*, just like *Kim*, presented the question of what damages must be shown in the context of an allegedly deceptive bargain—which is not the type of ICFA claim that Duarte has brought here. *Mulligan* does not broadly hold that ICFA requires—in *all* cases—actual *pecuniary* harm. The closest that *Mulligan* comes to making a general pronouncement on that issue was simply to say that, while the Illinois Attorney General may bring ICFA claims without a showing of actual

---

[6]Comcast has not advanced any argument on whether the alleged practice occurred in the conduct of Comcast's "trade or commerce." 815 ILCS 505/1(f); 815 ILCS 505/2.

11

damage, "it is well settled that in order to maintain a private cause of action under the Consumer Fraud Act, a plaintiff must prove that she suffered *actual damage* as a result of a violation of the Act." *Mulligan*, 888 N.E.2d at 1196 (emphasis added) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 859 (Ill. 2005)).[7] Even at its broadest, *Mulligan* only said that "actual damage" must be shown—which is the wording used in Section 10a of ICFA and is not confined to actual *pecuniary* damage.

As noted earlier, however, there are other Illinois state court opinions (though not cited by Comcast) that do generally say that financial harm is required for ICFA claims. One widely cited case is *Morris v. Harvey Cycle and Camper, Inc.,* 911 N.E.2d 1049, 1053 (Ill. App. Ct. 2009). In *Morris,* the plaintiff alleged that a car dealership engaged in deceptive practices when trying to sell a car to her brother. The dealership told the brother that the sale was contingent on financing, but took a down payment from him and let him drive the car while the dealership tried to arrange financing. *Id.* at 1051. After several days passed, the dealership called the brother and asked him to return to the dealership in order (supposedly) to re-sign some loan papers. *Id.* When the brother and the plaintiff arrived, the dealership announced that the brother had not qualified for financing and pressured the plaintiff to co-sign for her brother's loan. *Id.* When she declined, the dealership demanded the car back but refused to return her brother's down payment. *Id.* at 1051-52. The dealership's

---

[7]*Avery* too made no broad declaration that all ICFA claims must show pecuniary damage. The consumer in *Avery* offered no evidence that certain auto parts used in repairs (non-original equipment manufacturer parts) caused any devaluation in his car. 835 N.E.2d at 859 (consumer sold the car at the same price regardless of the difference in repair parts).

12

employees yelled at the plaintiff, blocked the car to prevent them from leaving, and then called the police to report that the car was stolen. *Id.* at 1052. The police officers sided with the plaintiff and her brother, who were allowed to drive away from the dealership. *Id.* Eventually, the brother was able to return the car in exchange for his down payment. *Id.* After the ordeal, the plaintiff alleged an ICFA claim (among others) against the dealership, seeking damages for emotional distress.

On those facts, *Morris* affirmed the dismissal of the ICFA claim, holding that ICFA "provides remedies for purely economic injuries," 911 N.E.2d at 1053 (citing *White v. DaimlerChrysler Corp.,* 856 N.E.2d 542, 550 (Ill. App. Ct. 2006)), and that actual damages must be "calculable and 'measured by the plaintiff's loss,'" 911 N.E.2d at 1053 (quoting *City of Chi. v. Michigan Beach Housing Cooperative*, 696 N.E.2d 804, 811 (Ill. App. Ct. 1998)). With only emotional-distress damages at stake, the ICFA claim did not state a viable ICFA claim. But here again the cases cited by *Morris* did not deal with *unfair* practices—only deceptive ones. In fact, *Michigan Beach Housing* did not even involve an ICFA claim at all. In that case, the City of Chicago brought a common-law fraud claim against a real-estate developer, asserting that the developer's misrepresentations caused a missed opportunity to convert low-income rental housing into cooperative housing. 696 N.E.2d at 809. The Illinois Appellate Court concluded that "the tort of common-law fraud primarily addresses the invasion of economic interests," and thus the intangible harm to the City's housing policy did not support a common-law fraud claim. *Id.* at 809-10. So *Michigan Beach Housing* does not directly support the interpretation of ICFA proposed by *Morris*, because

13

*Michigan Beach Housing* neither addressed ICFA nor *unfair*-practices claims, which can be very different from *deceptive*-practices claims.

That leaves the other case cited by *Morris*, namely, *White v. DaimlerChrysler Corporation.* In that case, the plaintiff invoked ICFA to challenge Chrysler's use of steel-made exhaust manifolds in Jeeps instead of the purported industry standard of cast-iron exhaust manifolds. 856 N.E.2d at 545. The Jeep owner did not, however, allege that the manifolds had malfunctioned in any way, nor could the owner specify how the Jeep's value was in any way diminished. *Id.* at 550. On those facts, the Illinois Appellate Court held that the car owner had not sufficiently alleged "actual damages." *Id. White* did not discuss, at all, whether emotional-distress damages are recoverable under ICFA—the Jeep owner asserted no such claim. What *White* does say, in introducing the topic of damages, is that "[t]he Act provides remedies for omissions resulting in purely economic injuries." *Id.* That is the statement—"purely economic injuries"—that *Morris* later picked up on in saying that ICFA "provides remedies for purely economic injuries." *Morris*, 911 N.E.2d at 1053 (citing *White,* 856 N.E.2d at 550). But *White* was merely introducing the topic of damages, and was *not* using the formulation "purely economic injuries" as a shorthand for saying that ICFA provides remedies *solely* for economic injuries, and not for emotional distress.

That *White* was not espousing a position on the pecuniary versus emotional-distress divide is confirmed by tracing through the case that *White* relied on for the statement that ICFA "provides remedies for omissions resulting in purely economic injuries," 856 N.E.2d at 550. *White* cited *Pappas v. Pella Corp.,* 844 N.E.2d 995, 1002

14

(Ill. App. Ct. 2006). In *Pappas*, the plaintiffs asserted that window-maker Pella had sold them leaky windows. 844 N.E.2d at 1001. Pella argued that ICFA allowed recovery only for products that were unreasonably dangerous. *Id.* The Illinois Appellate Court rejected Pella's argument, holding that there was no requirement of unreasonable danger or bodily harm, and that purely economic injury was enough:

> A defect could fall well short of the "unreasonably dangerous" standard yet still be serious enough that a reasonable buyer would not purchase the product if made aware of the defect.
>
> An omission need not concern potential bodily harm. The Consumer Fraud Act provides remedies for omissions resulting in *purely economic injury.*

844 N.E.2d at 1001 (emphasis added). Again, "purely" was not used in the sense of *limiting* ICFA's coverage to only pecuniary harm. Instead, *Pappas* was making the point that a "purely" financial harm was compensable under ICFA, and there was no requirement that there be bodily harm at all. *Pappas* in turn string-cited eight Illinois Appellate Court cases, none of which addressed the issue of emotional-distress damages under ICFA. *Id.* at 1001-02 (citing, among other cases, *Dewan v. Ford Motor Co.*, 842 N.E.2d 756, 760 (Ill. App. Ct. 2005)). The bottom line is that *Morris* transformed a series of cases that *allowed* recovery for "purely" economic harms into the proposition that the *only* form of damages allowed under ICFA are economic ones. Although Illinois Appellate Court authority is entitled to "great weight" on matters of Illinois law, *Allstate Ins. Co. v. Menards, Inc.,* 285 F.3d 630, 637 (7th Cir. 2002), *Morris* teeters on a shaky foundation. And when there are "persuasive indications" that the state supreme court would disagree with the intermediate appellate court, *id.*, then the federal courts of course must decide the case as it predicts (as best as it

15

can) the state supreme court would, *id.* ("the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question").

It is time to return to where the analysis began: the statute's text. *People v. Giraud*, 980 N.E.2d 1107, 1109 (Ill. 2012) (holding that the "surest and most reliable indicator" of legislative intent is "the statutory language itself, given its plain and ordinary meaning") (citing *Ill. Graphics Co. v. Nickum,* 639 N.E.2d 1282, 1287 (Ill. 1994)). And not just the particular statutory words in isolation divorced from context, but the entirety of the pertinent provision. *People v. Davis*, 766 N.E.2d 641, 644 (Ill. 2002) (stating that courts should consider "the statute in its entirety"). As noted earlier, Section 10a of ICFA authorizes a private right of action for violations that result in "actual damages":

> Any person who suffers *actual damages* as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award *actual economic damages* or any other relief which the court deems proper …

815 ILCS 505/10a(a) (emphases added). Although the private right of action does require that the victim suffer "actual damages," that term is not limited to actual *financial* or pecuniary harm. The second sentence of Section 10a does use a limiting term—"actual *economic* damages"—but the first sentence does not. In keeping with the interpretive principle that a statute should be construed "so that no part of it is rendered meaningless or superfluous," *Giraud,* 980 N.E.2d at 1110 (citing *People v. Jones*, 824 N.E.2d 239, 242 (Ill. 2005)), the term "actual damages" must mean something broader than "actual economic damages." To interpret "actual damages"

as covering only pecuniary injury would render the word "economic" superfluous. Within a two-sentence breath, the Illinois legislature used two different terms, so the two terms should not bear the same meaning. *Carver v. Bond/Fayette/Effingham Reg'l Bd. of School Trs.,* 586 N.E.2d 1273, 1276 (Ill. 1992). ("When the legislature uses certain language in one part of a statute and different language in another, [the Court] may assume different meanings were intended.") So ICFA authorizes a cause of action for anyone who has suffered "actual damages"—whether pecuniary or not—and relief is available for not only "actual economic damages" but also for "any other relief which the court deems proper." 815 ILCS 505/10a(a).

There is at least one other commonly litigated Illinois statutory cause of action for which Illinois courts have interpreted the term "actual damages" to encompass emotional distress, and not just pecuniary harm. The Illinois Human Rights Act bars discrimination in a variety of contexts, and the remedial provisions (both in the Illinois Human Rights Commission and in the courts) authorize recovery for "actual damages." 775 ILCS 5/8A-104(B) (Commission may order respondent to "[p]ay actual damages"); 775 ILCS 5/10-102(C)(1)(A) ("court may award to the plaintiff actual and punitive damages"). It is long and well-settled that "actual damages" in that context does include damages for nonpecuniary harm. *Village of Bellwood Bd. of Fire and Police Com'rs v. Human Rights Com'n,* 541 N.E.2d 1248, 1258 (Ill. App. Ct. 1989) ("Illinois courts have long recognized that actual damages may include compensation for mental suffering."); *see also ISS Int'l Serv. Sys., Inc. v. Ill. Human Rights Comm'n,*

17

651 N.E.2d 592, 598 (Ill. App. Ct. 1995); *Szkoda v. Illinois Human Rights Comm'n*, 706 N.E.2d 962, 972 (Ill. App. Ct. 1998).

To be sure, as noted earlier, context matters. There might very well be Illinois statutes for which the state supreme court would interpret "actual damages" to be limited to pecuniary damages only. But all signs point to an interpretation of ICFA as allowing recovery for emotional distress: the breadth of the term; the distinction from "actual economic damages"; and the inaptness of trying to overlay a benefit-of-the-bargain form of relief onto a claim asserting an unfair practice, rather than a deceptive one. Duarte's allegations of emotional distress, Compl. ¶ 33, state a viable claim for actual damages under ICFA.[8]

### IV. Conclusion

For the reasons discussed, Comcast's motion to dismiss Duarte's claim under the Illinois Consumer Fraud and Deceptive Practices Act is denied. Duarte has sufficiently pled that Comcast intended that she rely on the allegedly unfair swapping-in of another debt collector, and that the unfair move caused her actual damages. The status and motion hearing of July 25, 2018 remain in place.

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 16, 2018

---

[8]Of course, alleging emotional distress from the use of another debt collector is one thing at the pleading stage, when the truth of the allegation must be assumed. At trial, Duarte will have the burden of proving it.